UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

KEVIN FLANAGAN and EILEEN :
FLANAGAN, in their own right :
and as next friend of C.F., :
a minor, :
             Plaintiffs, :
                      :
   v. : 
                      : MC 05-23S
WYNDHAM INTERNATIONAL, INC., :
WYNDHAM MANAGEMENT CORP., :
SUGAR BAY CLUB AND RESORT CORP., :
RIK BLYTH, and BRYAN HORNBY, :
             Defendants. :


BRIAN and LINDA JAMES, :
as parents and next friend, :
and on behalf of B.J., a minor, :
             Plaintiffs, :
   v. :
                      :
WYNDHAM INTERNATIONAL, INC., :
WYNDHAM MANAGEMENT CORP., :
SUGAR BAY CLUB AND RESORT CORP., :
RIK BLYTH, and BRYAN HORNBY, :
             Defendants. :


**MEMORANDUM AND ORDER GRANTING
DEFENDANTS' MOTION TO COMPEL**

Before the court is the Motion to Compel (Document #20) ("Motion") of Defendants Wyndham International, Inc., Wyndham Management Corp., Sugar Bay Club and Resort Corp., and Rik Blyth (collectively "Defendants"). The Motion seeks to compel production of five[1] documents responsive to the subpoena duces tecum issued to and served on Brian and Linda James ("Deponents" or "Plaintiffs"). A hearing was held on June 15, 2005. For the

---

[1] At the June 15, 2005, hearing, counsel for Defendants indicated that as of that date only four documents were still at issue: Bates Numbers J00032, J00037, J00038, and J00039-40.

reasons stated below, the Motion is granted.

## I. The Documents

The documents at issue are handwritten notes of Brian James ("Mr. James") regarding telephone conversations or other communications which he had with representatives of the Virgin Islands government. The documents also contain handwritten notes from Mr. James to his counsel, but production of these notes is not sought. Defendants agree that they may be redacted. Defendants seek production only of the notes which Mr. James made of his communications with governmental representatives.

## II. The Prior Ruling

### A. Matters at Issue

On March 21, 2005, the court conducted a hearing on a related matter, Defendants' Petition to Enforce Subpoenae (Document #1) ("Petition"). That Petition sought an order compelling deposition testimony from Mr. James and Linda James ("Mrs. James") regarding certain questions which their counsel had instructed them not to answer when they were deposed on August 11 and 12, 2004, respectively. See Petition at 2; Declaration of Douglas C. Beach dated 2/16/05 (Document #3) ("Beach 2/16/05 Decl."), Exhibit ("Ex.") A (Excerpts of Depositions conducted on 8/11/04 and 8/12/04). The Petition also sought production of notes which Mrs. James had prepared concerning conversations with her daughter, the victim of the molestation which has given rise to the present litigation. See Petition at 2; Beach 2/16/05 Decl. ¶¶ 12-14; id., Ex. A (Transcript ("Tr.")) at 195-200.

In opposing the Petition, Plaintiffs argued that the communications between Plaintiffs and the Virgin Islands authorities were protected under the work product and common interest doctrines. See Memorandum of Law in Support of Plaintiffs' Objection to the Wyndham Defendants' Petition to

2

Enforce Subpoena (Document #12) at 6-8. Plaintiffs argued that the notes of Mrs. James were protected under the work product doctrine in that they were allegedly prepared by or on behalf of attorneys in anticipation of litigation, see id. at 7-8, and also protected under the attorney-client privilege in that they were allegedly "created at the request of counsel and in connection with potential litigation against Wyndham and others ...," id. at 9.

### B. Ruling and Rationale

The court overruled these objections and granted the Petition in all respects except for attorneys' fees. See Order of 3/29/05 (Document #16); see also Transcript of March 21, 2005, hearing ("3/21/05 Tr.") at 27. The court found that there was no privilege with respect to Plaintiffs' communications with the governmental authorities in the Virgin Islands, see 3/21/05 Tr. at 25, and rejected the contention that Mrs. James' notes were privileged, see id. at 25-27. Explaining the latter ruling, the court began by noting that when Mrs. James was first asked about the notes at her deposition: "she was asked multiple questions about her preparation of that document. Never once did she suggest in any way that the impetus, or reason, for her creating that document was an instruction by legal counsel." Id. at 26. After observing that there also was reason to question whether Plaintiffs' contact with the law firm of Williams & Connolly preceded the creation of the notes, the court again cited the striking omission in Mrs. James' deposition testimony and the significance which the court attached to it: "more importantly, the fact that deponent simply gave no indication that was the reason for her preparation of this document." Id.

The court then addressed the March 7, 2005, affidavit from Mrs. James in which she stated that she had prepared the notes at the request of Williams & Connolly and in connection with that

3

firm's representation of her family in a civil lawsuit arising from the molestation of her daughter. See Tr. of 3/29/05 at 26.

> The court finds it difficult to reconcile the March 7, 2005[,] affidavit from M[rs.] James with her testimony at the deposition where she gave no hint that the reason for creation of this document was a statement by her husband relaying the advice of legal counsel.

Id. at 27. The court also noted the absence of affidavits from Mr. James, attesting that he had instructed his wife to make the notes at the direction of legal counsel, and from any attorney at Williams & Connelly, attesting that Mr. James had been so directed. See id.

### C. Denial of Request for Attorneys' Fees

After completing the ruling, the court addressed Defendants' request for attorneys' fees pursuant to Fed. R. Civ. P. 37(a)(4). See Tr. of 3/29/05 at 27-28. Although the court expressed its belief that the matter was "extremely clear-cut, and that the arguments made by the plaintiffs in opposition to the motion were a stretch," id. at 27, the court declined to grant the request for attorneys' fees, see id. The court indicated that it did so "only because I have to acknowledge that arguably, perhaps by relying upon the opinion of the Magistrate Judge in the Virgin Islands,[2] counsel for the plaintiffs was somehow put on the

---

[2] On May 19, 2003, a magistrate judge of the U.S. District Court for the Virgin Islands issued an order in the related case of Gayter et al. v. Wyndham Int'l Inc., et al., C.A. No. 2001-147 M/R (D.V.I.) (the "Gayter" case), finding that certain documents, specifically e-mails between plaintiffs in the Gayter case and Virgin Islands Assistant Attorney General Douglas Dick regarding the criminal prosecution of Brian Hornby, were protected and not discoverable. See Declaration of Douglas C. Beach (Document #3) ("Beach 2/16/05 Decl."), Exhibit ("Ex.") D (Memorandum) at 2-3, 6. In reaching his decision, the magistrate judge referred to both the attorney-client privilege and the work product privilege, although it is not clear from his order which documents, if any, were protected by the attorney-client

4

wrong track, and that track continued." Id. at 28.

### III. The Requests and Refusals for Production of the Documents

As a result of the court's Order of 3/29/05, Mr. and Mrs. James were scheduled to be deposed on the afternoon of April 14, 2005. That morning counsel for Defendants, Douglas C. Beach ("Attorney Beach"), faxed a letter to Plaintiffs' counsel, requesting production of the five documents which are the subject of the instant Motion. See Memorandum of Law in Support of Motion to Compel ("Defendants' Mem."), Ex. D (Letter from Beach to Jobes of 4/14/05). In the letter, Attorney Beach referenced a telephone conversation between counsel the previous evening in which Plaintiffs' counsel had indicated that Plaintiffs did not intend to produce any additional documents. See id. Attorney Beach requested "that Plaintiffs reconsider their position in order to avoid further motion practice," id., and observed that "[t]here are at least five other documents identified in the James Privilege Log that should also be produced, in light of the Court's Order [of 3/29/05] ...," id.

Plaintiffs' counsel Jana D. Jobes faxed a response to the letter less than an hour before the start of Mr. James' deposition. See id., Ex. E (Letter from Jobes to Beach of 4/14/05). After stating that one of the five documents requested was a duplicate of a document already produced to Defendants, Ms. Jobes asserted that the other four documents were:

> privileged under the work product doctrine and the attorney client privilege. These documents were created at the direction of counsel in anticipation of

---

privilege. See id. at 3 n.3.
    On October 1, 2004, Virgin Islands District Judge Thomas K. Moore reversed the magistrate judge, finding that the documents were not protected under the work product doctrine because they were not prepared by or on behalf of attorneys in anticipation of litigation, see id. at 5-6, and that "the magistrate judge's decision was clearly erroneous and contrary to law," id. at 7.

5

> litigation; and they constitute confidential communications with counsel. The privilege of these documents is independent of any previous claim that these documents were protected under the common interest doctrine. Thus, Defendants are not entitled to the production of these documents.

See id., Ex. E at 1.

## IV. The April 14, 2005, Deposition of Mr. James

### A. Questions re the Conversations

Early in the deposition, Mr. Beach questioned Mr. James about the notes which he had made of his initial telephone conversation with Virgin Islands Assistant Attorney General Douglas Dick (Document J00031).[3] See Tr. of Deposition of Mr. James on 4/14/05 ("4/14/05 Dep. Tr.") at 15-34. Although Mr. James responded to several questions that he did not recall or was uncertain as to the meaning of particular entries, see id. at 21, 23, 28-30, Mr. Beach was still able to obtain a fair amount of information from him by going through the notes line by line, see id. at 15-34. After completing this task, Mr. Beach asked Mr. James: "What else other than what we've already talked about from your notes, what else do you remember of your phone call with Attorney Dick, the first phone call?" Id. at 34. Mr. James responded that he did not recall any other information. See id. He also could not remember how long the conversation had lasted. See id. at 34-35.

When the questioning proceeded to the next conversation which Mr. James had with Assistant Attorney General Dick ("Mr. Dick"), Mr. James was unable to testify specifically about the conversation, see id. at 38-39, but stated that "the conversation subject matter would revolve around what happened with [my

---

[3] These notes were produced to Defendants on April 13, 2005. See Memorandum of Law in Support of Motion to Compel ("Defendants' Mem."), Ex. B (Letter from Jobes to Beach and Zebedee).

6

daughter]," id. at 39.  Although Mr. James explained what he meant by this, see id., and was able to provide some detail about the conversation, see id. at 39-43, he also responded to several questions that he did not recall, see id. 39-42, and indicated that he was not sure in which conversation with Mr. Dick certain matters had been discussed, see id. at 41, 48.  Similarly, when asked about his telephone conversation with Investigator William Curtis ("Investigator Curtis"),[4] Mr. James could not say specifically what had been discussed with Investigator Curtis, see id. at 45-46, although he offered that most of the questions which he directed to the investigator related to a report which Investigator Curtis was to provide to the Virgin Islands Attorney General's office, see id. at 46-47.  While Mr. James was able to provide some additional information about his contacts with Investigator Curtis, he also indicated that he did not recall sufficiently to answer the questions posed.  See id. at 46-50.

   **B.  Questions Re the Notes**

After determining that Mr. James had not spoken to either Mr. Dick or Investigator Curtis since being deposed in August of 2004, see id. at 50, and that the last conversation with Mr. Dick could have occurred as long ago as April of 2004, see id. at 49, Mr. Beach attempted to ask Mr. James about the notes which Mr. James had made of his conversations with these two men, see id. at 50-51.  Plaintiffs' counsel interposed numerous meritless objections and repeatedly instructed Mr. James not to answer. See id. at 51-54.  Even more egregious, Plaintiffs' counsel engaged in blatant, improper coaching, when Mr. Beach sought to determine why the notes had been created:

   Q.   Why did any subsequent phone call that you had
        with either Agent Curtis or Doug Dick, why did

_____

   [4] William Curtis was an investigator in the Virgin Islands Office of Attorney General.  See Beach 2/16/05 Decl. ¶ 7.

7

> you make notes during subsequent phone calls?
>
> MS. MAINIGI: Objection to form. I'm going to instruct him not to answer. He was making notes at the direction of counsel, Doug, and I've told you that already.
>
> MR. BEACH: I don't want to hear you testify, Counsel. I'm asking the witness the questions.
>
> MS. MAINIGI: The question is privileged or the answer is privileged. He did it at the direction of counsel, that's why I'm making that representation to you.
>
> MR. BEACH: Are you instructing him not to answer the question?
>
> MS. MAINIGI: Brian, go ahead and answer that question.
>
> A.   I took the notes at the direction of my lawyers.

Id. at 56-57.

Later in the deposition, when Mr. Beach attempted to find out when Mr. James had been instructed to make these notes, Plaintiffs' counsel again interposed baseless and meritless objections and again engaged in improper coaching. See id. at 78-81. In this instance, Plaintiffs' counsel ultimately dispensed with making objections and instead prevented the witness from answering an unobjectionable question from Mr. Beach by interjecting her own leading question:

> Q.   Can you tell me, Mr. James, when you received any instructions to make these notes?
>
> MS. MAINIGI: I'm going to object on the basis of privilege. But, Mr. James, if you have any date in mind, you can go ahead and share it if you have certainty as to a date.
>
> Q.   And I'm not asking you for a specific date, but generally speaking, Mr. James?

8

        MS. MAINIGI: If you have a date in mind, Brian, go ahead, but don't offer anything but --

A.    I don't have a specific date in mind, but early on everything was under privilege.

Q.    And "by early on," can you tell me what you mean by that?

        MS. MAINIGI: Objection to form. Only if you know.

A.    I don't know the date.

Q.    Well, I'm not asking -- when you say "early on," I'm just trying to get -- so I understand by what you mean by "early on," is all I'm trying to understand?

        MS. MAINIGI: Objection. Asked and answered.

Q.    By "early on" when, Mr. James?

        MS. MAINIGI: Objection. Asked and answered.

Q.    Go ahead just for the record, Mr. James?

        THE WITNESS: Counsel, am I able to discuss this?

        MS. MAINIGI: If, Mr. James, you have knowledge of the date, that's fine, but if you don't have knowledge of the date --

A.    I do not have knowledge of a date.

        MS. MAINIGI: -- not to speculate about a date.

A.    Yeah. I do not have knowledge of the date.

Q.    Okay. Let me ask it this way, Mr. James, when you say "early on," early on in reference to what event?

> MS. MAINIGI: **Well, Mr. James, why don't you answer this question: Was it after the first conversation with Doug Dick, and was it before your second conversation with Doug Dick?**
>
> THE WITNESS: **Yes.**

Tr. at 79-80 (bold added).

As partly reflected in the above excerpts, Plaintiffs' counsel repeatedly imposed improper objections and instructed Mr. James not to answer questions such as where the notes were kept, see id. at 51, how many pages there were, see id., whether they were all handwritten, see id. at 53, whether he showed the notes to his attorneys, see id. at 54, whether he used the same methodology in making the notes, see id. at 57, whether he followed the same format as he used in making notes of the first conversation, see id., what instructions he received regarding the notes, see id. at 79, when the instructions were given, see id. at 79-80, and how the instructions were given, see id. at 81. Some of these questions were directly relevant to determining the validity of Plaintiffs' claims of privilege.[5]

## V. Waiver

As the party invoking the claim of privilege, Plaintiffs bear the burden of establishing that it applies to the documents at issue and that it has not been waived. See In re Keeper of

---

[5] Counsel's coaching and baseless objections were not the only instances of obstructionist behavior on her part. The transcript reflects that Mr. James sent a photograph of his daughter by e-mail to an investigator in the Virgin Islands Attorney General's Office. See 4/14/05 Tr. at 10. Although this photograph clearly fell within the scope of the subpoena duces tecum served upon Mr. James, see Notice of Deposition at 2 (attached to subpoenas duces tecum), Plaintiffs' counsel objected to Defendants' counsel's request that the photograph be produced, see id. at 10-11, and told Defendants' counsel to send her a letter, see id. at 11. Inexplicably, Plaintiffs' counsel repeatedly refused to state the basis for her objection, see id. at 11-12, even after being told by Defendants' counsel that doing so would benefit the court, see id. at 12.

10

Records, 348 F.3d 16, 22 (1st Cir. 2003). Plaintiffs originally objected to producing three of the documents (J00032, J00037, and J00038) on grounds of work product protection and attorney-client privilege. See Defendants' Mem., Ex. C (Plaintiff's [sic] Privilege Log) at 2-3. As to the fourth document (J00039-40), Plaintiffs asserted only work product protection. See id. at 3. This document contains only notes taken by Mr. James of a telephone call between him and a representative of the Virgin Islands government. See id.

Responding to the instant Motion, Plaintiffs now claim that they withheld these documents on three separate independent bases: 1) attorney-client privilege; 2) work product of Plaintiffs and their counsel; and 3) work product of the Virgin Islands prosecutor which was protected under the common interest doctrine. See Memorandum of Law in Support of Plaintiffs' Objection to the Wyndham Defendants' Motion to Compel ("Plaintiffs' Mem.") at 4.

Plaintiffs' contention that they asserted these three privileges for each of the four documents in Plaintiffs' Privilege Log, see id. at 4 n.4, is erroneous. As noted above, the only claim of privilege asserted for Document J00039-40 is "Work product privilege (Common interest). See Order in Gayter case, dated 5/19/03." Defendants' Mem., Ex. C at 3. There is no claim of attorney-client privilege for this document. At the June 15, 2005, hearing, Plaintiffs attributed this omission allegedly to Plaintiffs' initial uncertainty regarding the date of the document[6] and whether it was created before or after Mr. James' contact with Williams & Connolly. Plaintiffs indicated that subsequent to preparation of the privilege log they

---

[6] In Plaintiffs' Privilege Log the date following Document J00039-40 is "8/29/??[.]" See Defendants' Mem., Ex. C at 3.

determined that Document J00031 postdated Mr. James' contact with the law firm. The court finds this explanation unpersuasive for two reasons. First, for the other three documents at issue here (J00032, J00037, and J00038), Plaintiffs indicated that the dates were "Unknown." Defendants' Mem., Ex. C at 2. Not withstanding the even greater uncertainty expressed regarding the creation of these documents,[7] Plaintiffs still included "Attorney client privilege" as a reason for withholding the document. Second, Plaintiffs never updated the privilege log after they determined that Document J00039-40 postdated Mr. James' contact with Williams & Connolly, and they did not otherwise inform Defendants of this information.

Further undermining Plaintiffs' claim that they asserted three independent bases for withholding the documents is the fact that the privilege log describes three of the unproduced documents (J00032, J00037, and J00038) in precisely the same terms as the one page of notes (Document J00031) that was produced to Defendants on April 13, 2005. See Defendants' Mem., Ex. C at 2; Ex. B (Letter from Jobes to Beach and Zebedee of 4/13/05). Plaintiffs attempt to explain this circumstance by claiming that "upon review, Plaintiffs realized that this document was created prior to Plaintiffs' initial consultation with counsel, and therefore the only basis that should have been asserted for withholding this document was the common interest doctrine." Plaintiffs' Mem. at 4 n.6. However, in providing this document to Defendants, Plaintiffs did not so inform Defendants. See Defendants' Mem., Ex. B.

The court rejects Plaintiffs' implicit contention that information provided in the privilege log was sufficient to inform Defendants that Plaintiffs were claiming that the

---

[7] The greater uncertainty is reflected in "Unknown" as compared to "8/29/??[.]" Id. at 2-3.

documents were protected not only as work product of the Virgin Islands prosecutor under the common interest doctrine, but also as work product of Plaintiffs and their counsel. The court finds that, prior to the April 14, 2005, letter from Ms. Jobes to Mr. Beach, the only grounds asserted by Plaintiffs for withholding Documents J00032, J00037, and J00038 were 1) work product of the Virgin Islands prosecutor and 2) attorney-client privilege as to handwritten notes of Mr. James to counsel. The court further finds that prior to that date the only ground asserted for withholding Document J00039-40 was work product of the Virgin Islands prosecutor.

Under the "specify or waive" standard inherent in Fed. R. Civ. P. 45(d)(2),[8] Plaintiffs waived any argument for non-production that was not included in their original privilege log, see In re Grand Jury Subpoena, 274 F.3d 563, 576 (1st Cir. 2001) ("the 'specify or waive' rule applies equally in the context of claims of work product privilege"), or, at the very latest, not communicated to Plaintiffs prior to the court's March 29, 2005, ruling. Accordingly, I find that Plaintiffs waived any claims that Documents J00032, J00037, and J00038 are protected by the attorney-client privilege (except as to the notes on those documents from Mr. James to counsel) and also as work product of Plaintiffs and their counsel. I further find that Plaintiffs waived any claim that Document J00039-40 is protected by attorney-client privilege.

---

[8] Fed. R. Civ. P. 45(d)(2) provides:

When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

Fed. R. Civ. P. 45(d)(2).

13

## VI. Attorney-client Privilege

Even if the court overlooked Plaintiffs' waiver, Plaintiffs' claim of attorney-client privilege as to the documents still fails. The notes that Mr. James took during his telephone conversations with Virgin Islands authorities are not privileged because they are not attorney-client communications. The mere transmittal of non-privileged communications to counsel does not render the underlying document privileged. See Maine v. U.S. Dep't of Interior, 298 F.3d 60, 71-72 (1st Cir. 2002)("[T]he attorney-client privilege 'does not allow the withholding of documents simply because they are the product of an attorney-client relationship .... It must also be demonstrated that the information is confidential.'")(quoting Mead Data Central, Inc. v. United States Dep't of Air Force, 566 F.2d 242, 253 (D.C. Cir. 1977)(footnote omitted))(second alteration in original); State v. Bertram, 591 A.2d 14, 27-28 (R.I. 1991)("'[T]he attorney-client privilege protects from disclosure only the confidential communications between a client and his or her attorney.'") (quoting State v. von Bulow, 475 A.2d 995, 1004 (R.I. 1984)).

Bernbach v. Timex Corp., 174 F.R.D. 9 (D. Conn. 1997), cited by Plaintiffs, see Plaintiffs' Mem. at 6, is readily distinguishable from the instant case. The notebooks created by the plaintiff in Bernbach are equivalent to the handwritten notes of Mr. James to his counsel, and Defendants do not seek production of those notes to counsel. What is sought are notes of Mr. James' unprivileged communications with the Virgin Islands authorities. The court agrees with Defendants that "whereas communications to an attorney are privileged, unprivileged documents later relayed to attorneys are not." Reply Memorandum of Law in Support of Motion to Compel ("Defendants' Reply Mem.") at 3 n.3; see also Maine v. U.S. Dep't of Interior, 298 F.3d at 71-72; State v. Bertram, 591 A.2d at 27-28. Mr. James'

14

independent decision to take notes before any instructions strongly suggests that he would have taken the notes at issue even without being instructed to do so by counsel.  In addition, Plaintiffs' claim that the notes were created at the instruction of counsel is dependent upon the deposition testimony of Mr. James, see Plaintiffs' Mem., Ex. C, and the declarations which he and Attorney Petrosinelli subsequently executed to that effect, see id., Ex. A (Declaration of Brian James dated 5/13/05); id., Ex. B (Declaration of Joseph G. Petrosinelli, Esq., dated 5/16/05).  The persuasiveness of this testimony and of these affidavits is greatly weakened by counsel's blatant coaching at the deposition and the fact that the court had previously commented adversely upon the absence of such affidavits at the hearing on March 21, 2005.

## VII.  Work Product

Plaintiffs' claim that the documents are protected work product would also fail even if it had not been waived.  Indeed, the contention that the instruction of Mr. Petrosinelli that Mr. James "make notes of future conversations that he might have with the Virgin Islands prosecuting authorities pertaining to the events at issue," Plaintiffs' Mem., Ex. B, could, in the circumstances presented, transform such notes into Mr. Petrosinelli's protected work product is totally without merit. As Defendants point out:

> The work product doctrine is designed to protect from disclosure the mental processes and efforts of an attorney.  By logical extension, it extends to work product prepared by others at the direction of counsel, in anticipation of litigation.  However, the documents at issue were not prepared at any specific instruction of counsel.  Counsel did not, for example, instruct Mr. James to contact the Virgin Islands authority and report back on the communication.  Rather, counsel merely asked that he take notes of any conversations he might have. This is precisely analogous to a company's general

15

> counsel instructing employees to take notes of all of their meetings, and to report back to the general counsel's office on the result of the meetings. If Plaintiffs have their way, unscrupulous litigants would have a clear roadmap to lawful obstruction of the discovery process, undermining the modern discovery rules designed to permit "parties to obtain the fullest possible knowledge of the issues and facts before trial." <u>Hickman v. Taylor</u>, 329 U.S. 495, 500 (1947).

Defendants' Reply Mem. at 4 n.4.

## VIII. Summary

Plaintiffs waived their claims that the documents were protected by attorney-client privilege and also protected as work product of their attorney by failing to make this contention prior to the court's ruling on March 29, 2005. Even if the court overlooked the waiver, the claims still fail because the documents are not protected under either privilege. Finally, even if the documents were arguably protected, Plaintiffs should not be allowed to withhold them when Plaintiffs improperly thwarted discovery of information which would inform Defendants and the court whether the claimed privilege or protection actually exists.

Accordingly, the Motion to Compel is granted.[9]

---

[9] At the conclusion of the June 15, 2005, hearing the court gave notice pursuant to Fed. R. Civ. P. 37(a)(4)(A) that it was considering granting Defendants' request for reasonable expenses and attorney's fees pursuant to Fed. R. Civ. P. 37(a)(4)(A) and set dates for various filings. In order that Plaintiffs not have to respond without the benefit of this Memorandum and Order, the court subsequently vacated those dates.
The court now sets **July 8, 2005**, as the date by which Defendants shall file their itemized request for reasonable expenses and attorney's fees and **July 18, 2005**, as the date for Plaintiffs to file their opposition to any expenses or attorney's fees being awarded as well as opposition to the specific expenses and attorney's fees sought. This procedure differs from that announced at the hearing in that Plaintiffs will file a single response regarding Defendants' requests for expenses and attorney's fees. The court will conduct a hearing on the request for attorney's fees on **July 28, 2005**.

16

So ordered.

ENTER:                                          BY ORDER:

David L. Martin
United States Magistrate Judge                  Deputy Clerk
June 29, 2005